UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| ANDREW CASIAS, ERNEST CASIAS, on behalf of themselves and similarly-situated employees of Distribution Management Corporation, Inc., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 1:11-cv-00874 MV/RHS |
| DISTRIBUTION MANAGEMENT CORPORATION, INC., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| DISTRIBUTION MANAGEMENT CORPORATION, INC., | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANDREW CASIAS, ERNEST CASIAS, on behalf of themselves and similarly-situated employees of  Distribution Management Corporation, Inc., | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**COUNTERCLAIM PLAINTIFF'S RESPONSE TO COUNTERCLAIM DEFENDANTS'
MOTION TO DISMISS AMENDED COUNTERCLAIM**

Counterclaim Plaintiff, Distribution Management Corporation, Inc. ("DMC"), by counsel

and pursuant to Local Rule 7.4 hereby responds to Counterclaim Defendants' Motion to Dismiss

Amended Counterclaim ("Second Motion to Dismiss").

# I.

## <u>INTRODUCTION</u>

On October 6, 2011, DMC responded to the claims of Andrew Casias and Ernest Casias by filing a counterclaim claiming both were independent contractors who agreed in writing to indemnify DMC for the claims they made.  Counterclaim Defendants moved to dismiss the counterclaim ("First Motion to Dismiss"), and DMC filed a response showing that directly analogous case law required rejection of the First Motion to Dismiss.  DMC also filed its Amended Counterclaim in order to include a written agreement ("Subcontractor Agreement") Ernest Casias signed subsequent to the signed Independent Contractor Agreement attached to the original counterclaim.  On January 4, 2012, Counterclaim Defendants filed the Second Motion to Dismiss.[1]

Tellingly, the Second Motion to Dismiss and the arguments in support thereof are identical to the arguments submitted with the First Motion to Dismiss.  Counterclaim Defendants wholly failed to even address, let alone oppose, DMC's arguments and directly analogous case law calling for rejection of the First Motion to Dismiss.  In its opposition to the First Motion to Dismiss, DMC established it has asserted a valid counterclaim for indemnification in the event the Court concludes the parties correctly classified themselves as independent contractors. Counterclaim Defendants' failure to directly address these arguments in the Second Motion to Dismiss speaks volumes.  For the reasons set forth below, assuming the facts asserted by DMC are true, as required under Federal Rule of Civil Procedure 12(b)(6), DMC has asserted a valid counterclaim for indemnification.  Therefore, Counterclaim Defendants' Second Motion to Dismiss should be denied.

---

[1] The amended counterclaim and Second Motion to Dismiss render the First Motion to Dismiss moot.

## II.

## BACKGROUND FACTS

Counterclaim Defendants, independent contractors who provided services for DMC, each separately entered into contracts to provide driving services for the benefit of DMC customers. *Amended Counterclaim*, ¶¶ 2, 3.  A copy of the Independent Contractor Agreement signed by Andrew Casias is attached to the Amended Counterclaim as *Exhibit A*.   Under both the Independent Contractor Agreement and the Subcontractor Agreement signed by Ernest Casias,[2] all parties understood that Counterclaim Defendants were independent contractors and maintained their own equipment for delivery services, and the parties expressly disclaimed an employment relationship.  *Independent Contractor Agreement*, ¶ 3.01; *Subcontractor Agreement*, ¶ 1, 2(d).  The Subcontractor Agreement, like the Independent Contractor Agreement, expressly contemplated and detailed an independent contractor relationship.  *Subcontractor Agreement*, ¶ 1.   One difference between the Subcontractor Agreement and the Independent Contractor Agreement is that the Subcontractor Agreement identified additional applicable terms reflecting Ernest Casias' decision to operate multiple vehicles and hire multiple drivers to perform services for DMC.  *Id.*, ¶¶ 1-7.

On August 30, 2011, Counterclaim Defendants filed a Complaint seeking to be reclassified from independent contractors to employees of DMC.[3]  *Compl.* ¶ 11.  Counterclaim Defendants allege that, as employees, they are entitled to overtime pay under the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19-30 (" New Mexico Wage Act").  *Id.* ¶¶ 51, 68.

---

[2] Attached to the *Amended Counterclaim* as *Exhibit B*.

[3] Counterclaim Defendants have filed a Motion to Amend their initial Complaint.  The resolution of the Motion to Amend has no effect here because the proposed Amendment seeks only to narrow the putative class, and it does not alter the substantive claims of the named Plaintiffs/Defendants.

DMC answered the Complaint, claiming that Counterclaim Defendants were properly classified as independent contractors and should not be reclassified as employees. Moreover, DMC showed that each Counterclaim Defendant agreed to indemnify DMC for actions brought against DMC. Specifically, the Independent Contractor Agreement provides, among other things relevant to this Counterclaim, that Andrew Casias:

> [A]grees to defend, indemnify and hold harmless [DMC] from any direct, indirect or consequential loss, damage, fine, expense, including reasonable attorney's fees, action, claim for injury to persons, including death, and damage to property, which [DMC] may incur arising out of or in connection with the operation of the Equipment, Contractor's obligations under this Agreement, or any breach by Contractor of the terms of this Agreement.

*Independent Contractor Agreement*, ¶ 5.13. In addition, the Subcontractor Agreement signed by Ernest Casias contains the following provision:

> **INDEMNIFICATION.** The Carrier (the "Indemnitor") agrees to indemnify and hold harmless the Company (the "Indemnitee") from and against any claims, damages, losses or expenses, including reasonable attorneys' fees caused directly or indirectly by or arising out of the performance or failure of performance of this Agreement by the Indemnitor or any acts, omissions, or conduct of the Indemnitor, its drivers, employees or agents, whether negligent or otherwise, including but not limited to claims or demands by or in behalf of shippers, consignees, members of the public, drivers or employees and their dependents or next of kin.

*Subcontractor Agreement*, ¶ 7.

Under the Independent Contractor Agreement, the "Contractor" referenced is each respective Counterclaim Defendant. Further, the Independent Contractor Agreement identifies the Counterclaim Defendants as independent contractors, and it clearly and unambiguously sets forth the circumstances under which Counterclaim Defendants must indemnify DMC. Likewise, Ernest Casias is the "carrier" and "indemnitor" under the terms of the Subcontractor Agreement, which sets forth Ernest Casias' indemnification obligations. The claims asserted by Counterclaim Defendants in the Complaint, and the fees and expenses DMC has incurred, and

will incur, to defend against them, fall within the terms of the Independent Contractor Agreement and the Subcontractor Agreement.

The Independent Contractor Agreement also contains language that unambiguously shows that the intent of the parties in entering the terms and conditions of the Independent Contractor Agreement was to establish an independent contractor relationship. The most significant language illustrating the intent of the parties is identified below:

- The document is titled "Independent Contractor Agreement."
- The Independent Contractor Agreement expressly provides "Contractor is not an employee of Company [DMC]." *Independent Contractor Agreement*, ¶ 3.01.
- Independent Contractor is free to accept or reject any specific shipment offered by Company. *Id.*, ¶ 2.01.
- Independent Contractor must supply all tools, equipment, vehicles, insurance and supplies commonly used in the operation of the delivery business. *Id.*, ¶¶ 3.06, 3.07, 3.09, 3.12, 3.13, 3.14, 3.17.
- Independent Contractor maintains their own automobile insurance. *Id.*, ¶ 3.07.
- Independent Contractor maintains their own workers' compensation insurance. *Id.*, ¶ 3.09.
- Independent Contractor is responsible for their own local, state, and federal tax obligations and filings, and Independent Contractor maintains their own automobile insurance. *Id.*, ¶ 3.01.
- Independent Contractor is responsible for their own business expenses. Independent Contractor maintains their own automobile insurance. *Id.*, ¶ 3.01.
- The Independent Contractor Agreement is non-exclusive, and Independent Contractor maintains their own automobile insurance. *Id.*, ¶ 3.03.
- Independent Contractor is responsible for the maintenance and safety their own vehicle. *Id.*, ¶ 3.12.
- The Independent Contractor Agreement clearly states that the Independent Contractor is not an employee in the signature block, referred to as an "owner-operator."

Moreover, the Independent Contractor Agreement obligates Andrew Casias to create and submit invoices for payment for services, and it further obligates him to dispute payment in writing within seven days after receiving payment. *Id.*, ¶¶ 4.01, 4.02.

The Subcontractor Agreement likewise details the independent contractor nature and understanding of Ernest Casias's and DMC's relationship. *See*, *generally*, *Subcontractor*

*Agreement*, ¶¶ 1-9.  For example, the Subcontractor Agreement states that "it is the intention of the parties hereto that each party shall be and remain Independent Carriers as to each other and that nothing contained herein shall be construed as inconsistent with the status."  *Id.*, ¶ 1. Similarly, the Subcontractor Agreement states that the payment schedule to which the parties agreed will provide "complete remuneration for services provided by [Ernest Casias] under this Agreement."  *Id.,* ¶ 8.  Furthermore, the Subcontractor Agreement obligates Ernest Casias to provide all personnel, equipment and expenses for performing services under the Subcontractor Agreement, and it further obligates Ernest Casias to compensate his workers for the services performed.  *Id.*, ¶¶ 1, 2(d).

As more fully explained below, taking these facts as true (as the Court must under Fed.R.Civ.P. 12(b)(6)), Counterclaim Defendants were independent contractors of DMC, thereby rendering the New Mexico Wage Act inapplicable to this case. DMC is merely seeking to enforce a contractual provision to which Counterclaim Defendants, as independent contractors, agreed.   Counterclaim Defendants' attempt to dismiss the Amended Counterclaim should therefore be denied.

### III.

### <u>ARGUMENT</u>

Counterclaim Defendants, in the Second Motion to Dismiss, seek to dismiss DMC's Amended Counterclaim for contractual indemnity pursuant to Rule 12(b)(6).  In doing so, Counterclaim Defendants limit their challenge to two arguments:  (1) employees cannot be forced to pay attorney fees if they lose a claim for additional wages, and (2) the indemnity provisions at issue in this case are limited to accidents.  Counterclaim Defendants, however, ignore well settled law that requires Counterclaim Defendants to take the facts asserted by DMC (showing Counterclaim Defendants were independent contractors) as true.   Counterclaim

Defendants instead improperly ask the Court to take *their assertion* that they were employees as true.  Counterclaim Defendants then rely exclusively on case law applicable only to employment relationships.   Counterclaim Defendants also fail to support their bald assertion that the indemnification provisions are limited to accidents, even in the face of directly analogous case law fatal to their assertion.

Despite the fact Counterclaim Defendants were well aware of the contrary authority cited by DMC in its brief in opposition to the First Motion to Dismiss, Counterclaim Defendants have failed to cite any case law that dismissed an indemnification counterclaim based on an independent contractor agreement where the counterclaim defendants had been treated as independent contractors and have filed a lawsuit seeking reclassification as employees.  Taking DMC's assertions as true, DMC simply seeks to hold Counterclaim Defendants to the business agreement that each signed.  Furthermore, although employees generally cannot be forced to pay attorney fees in a wage action, whether pursuant to state or federal law, at issue in this case are the contractual promises made by independent contractors and DMC is only seeking relief to the extent Counterclaim Defendants are deemed by the Court to have been properly classified as independent contractors.  DMC's Amended Counterclaim for indemnification is therefore viable and should stand.

## A.

## Motion to Dismiss Standard

In considering the Motion to Dismiss, the Court may consider only the facts and allegations set forth in the pleadings and must accept as true all of the factual allegations made by DMC.  *Erickson v. Pardus*, 551 U.S. 89 (2007).  Specific facts are not necessary; DMC need

only give Counterclaim Defendants fair notice of what the claim is and the grounds upon which it rests. *Whitington v. Ortiz*, 307 Fed.Appx. 179, 187 (10th Cir. 2009).

The U.S. Supreme Court has held that to survive a motion to dismiss for failure to state a claim upon which relief can be granted, factual allegations must be enough to raise a right to relief above the speculative level when it is assumed that all allegations in the complaint are true even if they are doubtful in fact. *Bell Atl. Corp. v. Twombly*, 550 U.S. 555-56 (2007).  Further, "a well-pleaded Complaint may proceed even if it strikes a savvy Judge that actual proof of those facts is improbable." *Id.*  Here, DMC's pleadings, including the Agreements attached to the pleadings, show that Counterclaim Defendants were independent contractors who contractually agreed to indemnify DMC for any expense incurred by DMC at the hands of Counterclaim Defendants.  Taking DMC's independent contractor allegations as true, the New Mexico Wage Act does not even apply, and DMC is fully entitled to enforce the contractual indemnity provision to which Counterclaim Defendants agreed.  As such, the Amended Counterclaim cannot be dismissed.

## B.

## Counterclaim Defendants are Not "Employees" Under the New Mexico Wage Act

Counterclaim Defendants argue that DMC cannot assert a claim for contractual indemnification because indemnity (i.e., the payment of attorney fees to the prevailing party) is only available to employees.  *Second Motion to Dismiss* at 5.  This argument entirely misunderstands DMC's position in this case and ignores the fact that Counterclaim Defendants bear the burden of proving the existence of an employment relationship between them and DMC before the New Mexico Wage Act even applies.  *See, e.g.*, *Doe v. Cin-Lan, Inc.*, No. 08-CV-12719, 2008 U.S. Dist. LEXIS 107802, at *16 ( E.D. Mich. Nov. 20, 2008) (noting that, in order

for the plaintiff to prove her FLSA retaliation claim, she must show, among other things, she is an employee).

DMC is not Counterclaim Defendants' employer under the New Mexico Wage Act and therefore is not subject to that statute's requirements. Similarly, Counterclaim Defendants are not employees of DMC under the New Mexico Wage Act and therefore are not able to recover anything under the statute. *See Garcia v. Amer. Furniture Corp.*, 689 P.2d 934, 938 (N.M. Ct. App. 1984) (finding plaintiff was not an employee under "economic realties" test and therefore not entitled to recovery under New Mexico Wage Act). The independent contractor nature of the parties' relationship, pled in DMC's Counterclaim and shown through the Independent Contractor Agreement and Subcontractor Agreement, must be taken as true for purposes of the Second Motion to Dismiss.

The 2010 decision in *Spellman v. American Eagle Express, Inc.*, 680 F. Supp. 2d 188, 191 (D.D.C. 2010), provides the most analogous example in this regard. In *Spellman*, a group of independent contractor delivery drivers sought to be reclassified as employees and paid overtime under federal and state overtime provisions. The drivers, however, signed independent contractor agreements containing indemnification provisions requiring indemnification for any "action" against the defendant "arising out of or in connection with" the plaintiffs' "obligations under this Agreement." *Id*.

The plaintiffs moved to dismiss the counterclaim, arguing that employees cannot be forced to indemnify their employer for overtime violations. The court rejected the plaintiffs' argument and denied the motion to dismiss, recognizing "the crux" of the lawsuit was overtime – i.e., the ability to receive additional money under the written agreements. *Id.* The court then held that the defendant therefore had a reasonable basis for alleging the lawsuit was an action

arising out of the plaintiffs' obligations under the written agreements and the claim for indemnification must survive.  *Id.*  A substantially identical situation exists in the present case, and the same result should follow.[4]

Many other federal courts have also supported an employer's right to bring a counterclaim pursuant to the FLSA, an analogue to the state statute.  Under the FLSA analysis, courts have specifically enforced these provisions when the employer has been sued pursuant to the FLSA and the counterclaim is compulsory and not baseless.  *Kentisch v. Madahcom*, 566 F. Supp. 2d 1343 (D. Fla. 2008); *Ergo v. Int'l. Merch. Servs.*, 519 F. Supp. 2d 765 (N.D. Ill. 2007).  Courts have in fact upheld claims for indemnification for analogous FLSA claims where indemnification arose from a contract between the parties.  *Chao v. AKI Indus., Inc.*, No. 2:06-cv-0008, 2007 WL 1839652 (D. Utah June 25, 2007); *Daniels v. Bd. of Tr. of Herington Mun. Hosp.*, 841 F.Supp. 363 (D. Kan. 1993).[5]

The cases cited by Counterclaim Defendants fail to suggest a different conclusion.  In each of those cited cases, there was no question that the plaintiff was an employee and in dispute was an *employment* contract, not an independent contractor agreement.  *See Walter v. A.A.A. Waterproofing, Inc.*, 211 P.3d 454, 457 (Wash. Ct. App. 2009) ("[T]he arbitration agreement in the *employment* contract conflicts with the wage and hour statutes in that it entitles *employer* to

---

[4] The parties reached agreement on compensation for services to be performed.  *Independent Contractor Agreement,* ¶¶ 4.01, 4.02; *Subcontractor Agreement,* ¶¶ 1, 2(d), 8.  The Complaint challenges DMC's ability to enforce the provisions of the parties' agreements, including the provisions calling for Counterclaim Defendants to pay for their own workers' compensation or occupational accident insurance. *See Complaint,* ¶¶ 12-14.

[5] Because Counterclaim Defendants filed a lawsuit alleging that they were misclassified as independent contractors rather than employees, DMC's counterclaim based on the Independent Contractor Agreement was a compulsory counterclaim required to be filed at the time of DMC's responsive pleading for DMC to avoid the possibility of waiving the counterclaim.  Fed. R. Civ. P. 13(a); *Torres v. Gristede's Operating Corp.*, 2008 WL 4054417 (S.D.N.Y. 2008 ).  DMC simply protected its right to bring a cause of action based on the indemnification provisions of the Agreements when the Court ultimately finds that the Agreements are enforceable and that Counterclaim Defendants were independent contractors.

an award of attorney fees if employer prevails."); *N.M. Dept. of Labor v. Echostar Commc'ns Corp.*, 134 P.3d 780, 785 (holding that *employment* agreement whereby overtime would be calculated based on fluctuating workweek as determined under FLSA standards violated public policy set forth in state Minimum Wage Act) (emphasis added to all).

In sum, DMC seeks indemnification *only* to the extent Counterclaim Defendants are found to have been properly classified by DMC as independent contractors.  DMC's Amended Counterclaim expressly acknowledges this limitation.  *Amended Counterclaim*, ¶ 14.  Because independent contractors are not covered under the New Mexico Wage Act, Counterclaim Defendants' reliance on public policy arguments relating to admitted employees is ineffective, and the Motion to Dismiss should be denied.

## C.

### The Causes of Action Asserted by Counterclaim Defendants Fall Within the Scope of the Indemnity Provisions That Form the Basis of DMC's Counterclaim

Counterclaim Defendants' assertion that the indemnification provision should be limited to accidents causing injury or property damage is equally unavailing.  Counterclaim Defendants cite no case law supporting their argument, nor do they explain how such a limitation could have been intended, given the broad language contained in the indemnity provisions.  Lacking such support, Counterclaim Defendants' argument should be rejected.

The indemnity provision of the Independent Contractor Agreement finds Andrew Casias agreeing to:

> [D]efend, indemnify and hold harmless [DMC] from any direct, indirect or consequential loss, damage, fine, expense, including reasonable attorney's fees, action, claim for injury to persons, including death, and damage to property, which [DMC] may incur *arising out of or in connection with the operation of the Equipment, Contractor's obligations under this Agreement, or any breach by Contractor of the terms of this Agreement*.

*Independent Contractor Agreement*, ¶ 5.13

Likewise, the Subcontractor Agreement, applicable to Ernest Casias, contains the following provision:

> **INDEMNIFICATION.**  The Carrier (the "Indemnitor") agrees to indemnify and hold harmless the Company (the "Indemnitee") from and against any claims, damages, losses or expenses, including reasonable attorneys' fees caused directly or indirectly by or arising out of the performance or failure of performance of this Agreement by the Indemnitor or any acts, omissions, or conduct of the Indemnitor, its drivers, employees or agents, whether negligent or otherwise, including but not limited to claims or demands by or in behalf of shippers, consignees, members of the public, drivers or employees and their dependents or next of kin.

*Subcontractor Agreement*, ¶ 7.

The phrase "arising out of" "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Dowley v. Dewey Ballantine, LLP*, No. 05-622, 2006 U.S. Dist. LEXIS 23304, at *29 (D.D.C. Apr. 26, 2006); *accord Invista N. Am. S.A.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 206 (D.D.C. 2007) ("'arising out of' should be interpreted broadly") (*citing Dowley*).

It is beyond question that Counterclaim Defendants' causes of action have their "origin or genesis" in the Independent Contractor Agreement and Subcontractor Agreement.   The Independent Contractor Agreement and Subcontractor Agreement create and define the business relationship between DMC and Counterclaim Defendants, comprehensively setting forth each party's rights and obligations in connection with the transportation services Counterclaim Defendants agreed to perform on DMC's behalf, including compensation due for services.  Due to the comprehensive nature of these agreements, the substance of each claim asserted by

Counterclaim Defendants is addressed by the Independent Contractor Agreement and Subcontractor Agreement.  For example, in their Complaint, Counterclaim Defendants assert:

> The named Plaintiffs and the class Plaintiffs are similarly situated [ . . . ] and are uniformly subjected to Defendant's common policy and practice of unlawfully classifying Plaintiffs as "independent contractors[.]"

*Complaint*, ¶ 45.  However, DMC's classification of drivers is specifically addressed in the Independent Contractor Agreement:  "It is expressly understood and agreed that Contractor is an independent contractor for the Equipment and driver services provided pursuant to this Agreement."  *Independent Contractor Agreement*, ¶ 3.01.  Similarly, the Subcontractor Agreement states, "it is the intention of the parties hereto that each party shall be and remain independent Carriers as to each other and that nothing contained herein shall be construed as inconsistent with that status."  *Subcontractor Agreement*, ¶ 1.  Indeed, the Independent Contractor Agreement and Subcontractor Agreement each expressly show that each contractor is vested with the control over his own operation to such a degree as to ensure the independent contractor nature of the relationship, and, despite their current attempt to obtain more compensation, each contractor agreed on compensation for services to be performed. *Independent Contractor Agreement*, ¶¶ 4.01, 4.02; *Subcontractor Agreement*, ¶¶ 1, 2(d), 8.

In short, independent contractor status and therefore the inapplicability of the New Mexico Wage Act "arises out of" Counterclaim Defendants' contractual obligation to perform as independent contractors and their relationship with DMC.  Consequently, Counterclaim Defendants' claims plainly "arise out of" the Independent Contractor Agreement and Subcontractor Agreement and therefore fall within the scope of the indemnity provision.  *See Spellman,* 680 F.Supp.2d at 191 (holding under a substantially identical indemnification provision and counterclaim that the counterclaim should survive).  *See also Lozdoski v. City of*

*Chicago*, No. 09-C-658, 2009 U.S. Dist. LEXIS 59019, at *4 (N.D. Ill. July 10, 2009) (finding that the plaintiff's FLSA and state law claims fell within the scope of a contract provision requiring any claims "arising out of" the contract to be arbitrated).

DMC asserted its Amended Counterclaim based upon written agreements that were entered into and fully executed by each of the Counterclaim Defendants in this action. Those written agreements specifically set out when a contractor will be required to indemnify DMC and each Counterclaim Defendant agreed to and accepted the terms of the written agreements when beginning to provide delivery services for DMC. DMC's Amended Counterclaim is a compulsory action for enforcement of its rights under the provisions of the written agreements between each Counterclaim Defendant and DMC for indemnification solely for defense costs, including attorney fees. The Amended Counterclaim is not an attempt by DMC to be indemnified by its employee for DMC's violation. Counterclaim Defendants are not employees but rather are independent contractors and not subject to the benefits and provisions of the New Mexico Wage Act. *Garcia*, 689 P.2d 934, 938.

## IV.

## <u>CONCLUSION</u>

Counterclaim Defendants have provided neither binding nor analogous support that would foreclose a breach of contract/indemnity claim involving an independent contractor relationship. This is particularly notable considering Counterclaim Defendants had the benefit of DMC's brief in opposition to the First Motion to Dismiss, which contained authority contrary to Counterclaim Defendants' position, prior to filing the Second Motion to Dismiss. That contrary authority, particularly the *Spellman* case, shows that DMC's Amended Counterclaim is proper, and it has gone unrefuted by Counterclaim Defendants. At this point, DMC's pleadings have

provided more than enough to firmly establish that Counterclaim Defendants (1) were independent contractors, (2) agreed to indemnify DMC for all claims arising out of Counterclaim Defendants' obligations under the agreement, and (3) breached their obligations by bringing this action for reclassification and compensation above and beyond the rates to which they agreed. DMC's pleadings therefore far exceed the minimal standard necessary for surviving a motion to dismiss.  Accordingly, the Second Motion to Dismiss, which asks the Court to improperly presume the existence of an employer/employee relationship, should be denied.

Respectfully submitted,

/s/ Robert L. Browning
Robert L. Browning

Attorneys for Defendant,
Distribution Management Corp., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2012, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to the following parties by operation of the Court's electronic

filing system, and the parties may access this filing through the Court's system.

Pia Gallegos
pia@gallegoslaw.com
116 14th Street S.W.
Albuquerque, NM 87102

Steven K. Sanders
stevenksanders@aol.com
820 Second Street N.W.
Albuquerque, NM 87102

/s/ Robert L. Browning
Robert L. Browning

Robert L. Browning
rbrowning@scopelitis.com
A. Jack Finklea
jfinklea@scopelitis.com
Christopher Eckhart
ceckhart@scopelitis.com
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 W. Market Street, Suite 1500
Indianapolis, IN 46204
(317) 637-1777
Fax (317) 687-2414

Wayne G. Chew
Chew Law Offices
wgchew@wgchewlaw.com
20 First Plaza NW, Suite 517
Albuquerque, NM 87102
(505) 842-6363
Fax (505) 842-8607

H:\Users\bleive\Documents\Distribution Management\By Casias 13845.3\Response to dismiss counterclaim.doc