## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ANDREW CASIAS, ERNEST CASIAS,
on behalf of themselves and similarly-situated
employees of Distribution Management
Corporation, Inc.,

        Plaintiffs,

vs.                                  Case No. 1:11-CV-00874 MV/RHS

DISTRIBUTION MANAGEMENT
CORPORATION, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs Andrew Casias and Ernest Casias's

Motion to Dismiss Counterclaim [Doc. 20] and Motion to Dismiss Amended Counterclaim [Doc.

23].   Having considered the motions, briefs, and relevant law, and being otherwise fully

informed, the Court finds that the Motion to Dismiss Counterclaim is moot and will be denied as

moot and that the Motion to Dismiss Amended Counterclaim is well taken and will be granted.

## BACKGROUND

On August 30, 2011, Plaintiffs Andrew Casias and Ernest Casias ("Plaintiffs"), on behalf

of themselves and similarly-situated class members, filed a Complaint against Defendant

Distribution Management Corporation, Inc. ("Defendant") seeking equitable relief, employment

benefits, overtime pay, liquidated damages, and attorney's fees for alleged violations of the New

Mexico Minimum Wage Act, New Mexico Statutes Annotated Sections 50-4-19 through 50-4-30.

Thereafter, on October 6, 2011, Defendant filed an Answer and a Counterclaim.   Plaintiffs moved

to dismiss the Counterclaim on November 9, 2011, and Defendant responded on November 28,

2011.   On December 5, 2011, Defendant filed an Amended Counterclaim.   Plaintiffs moved to

dismiss the Amended Counterclaim on January 4, 2012, Defendant responded on January 23,

2012, and Plaintiffs replied on February 6, 2012.

In the Amended Counterclaim, Defendant alleges that Plaintiff Andrew Casias signed an

agreement dated November 10, 2009, in which he agreed to enter into an independent contractor

relationship with Defendant ("Independent Contractor Agreement").   *See* Am. Countercl. ¶¶ 2, 4.

Defendant alleges that the Independent Contractor Agreement provides that Plaintiff Andrew

Casias would indemnify Defendant as follows:

> ***Indemnity.***   Contractor [Andrew Casias] agrees to defend,
> indemnify and hold harmless Company [DMC] from any direct,
> indirect and consequential loss, damage, fine, expense, including
> reasonable attorney's fees, action, claim for injury to persons,
> including death, and damage to property, which Company [DMC]
> may incur arising out of or in connection with the operation of the
> Equipment, Contractor's [Andrew Casias's] obligations under this
> Agreement, or any breach by Contractor [Andrew Casias] of the
> terms of this Agreement.

*Id.* ¶ 9.  "Equipment" is defined as "[Contractor's] self-provided vehicle."   *See id.*, Exh A, p. 1.

In the Amended Counterclaim, Defendant further alleges that Plaintiff Ernest Casias

entered into in a written agreement with Defendant on October 15, 2010 ("Subcontractor

Agreement"), and that the Subcontractor Agreement, like the Independent Contractor Agreement,

expressly contemplated and detailed an independent contractor relationship.   *See id.* ¶¶ 3, 4.

Defendant further alleges that the Subcontractor Agreement contains, among other things, the

following indemnification provision:

> **INDEMNIFICATION.**   The Carrier (the "Indemnitor") [Ernest
> Casias] agrees to indemnify and hold harmless the Company (the
> "Indemnitee") [DMC] from and against any claims, damages, losses
> or expenses, including reasonable attorneys' fees caused directly or

2

> indirectly by or arising out of the performance or failure of
> performance of this Agreement by the Indemnitor [Andrew Casias]
> or any acts, omissions, or conduct of the Indemnitor [Andrew
> Casias], its drivers, employees or agents, whether negligent or
> otherwise, including but not limited to claims or demands by or [o]n
> behalf of shippers, consignees, members of the public, drivers or
> employees and their dependents or next of kin.

*Id.* ¶ 9.

Article III of the Independent Contractor Agreement is entitled "Duties of Contractor" and contains eighteen paragraphs detailing the duties of Andrew Casias under the Agreement, including but not limited to being hired as an independent contractor, providing "on-time delivery performance," "comply[ing] with all reporting and communication requirements," "provid[ing] all the Equipment ready to operate and fully roadworthy," "provid[ing] competent drivers," and "operat[ing] the Equipment in a safe and prudent manner."  *See id.*, Exh. A, ¶¶ 3.01 to 3.18. Article IV of the Independent Contractor Agreement is entitled "Compensation" and provides that "Contractor will be paid as described on the agreed upon Statement of Work."  *Id.*, Exh. A, ¶ 4.01.

Paragraph two of the Subcontractor Agreement is entitled "Transportation Services" and details the services Plaintiff Ernest Casias agrees to provide Defendant, including but not limited to "pickup and delivery service," "ship[ing] in accordance with applicable tariff regulations," providing "all personnel[ and] vehicles . . . necessary [for] pickup and delivery service," acquiring "a facility to accommodate and protect the transfer of property," and "comply[ing] strictly . . . with all other laws, rules, regulations and ordinances."  *Id.*, Exh. B, ¶ 2.  Paragraph eight of the Subcontractor Agreement is entitled "Payments to Carrier" and provides that "[Defendant] agrees to pay Carrier [Ernest Casias] on the basis of the attached Statement of Work."  *Id.*, Exh. B, ¶ 8.

Defendant alleges in its Amended Counterclaim that the claims asserted by Plaintiffs in the

Complaint, and the fees and expenses Defendant has incurred and will incur to defend Plaintiffs'

suit, fall within the terms of the indemnification provisions in the Independent Contractor

Agreement and Subcontractor Agreement (collectively, "Agreements").   *See id.* ¶ 13.   Defendant

makes no allegation in its Amended Counterclaim that Plaintiff Andrew Casias (1) operated

equipment improperly, (2) failed to fulfill any of his obligations under the Independent Contractor

Agreement, or (3) breached the Independent Contractor Agreement.   Likewise Defendant makes

no allegation that Plaintiff Ernest Casias (1) performed or failed to perform under the Agreement,

or (2) caused harm by his "act[], omission[], or conduct."

The only loss that Defendant alleges in the Amended Counterclaim is that Plaintiffs filed a

complaint against Defendant "seeking equitable relief, employment benefits, overtime pay,

liquidated damages and attorney fees . . . for alleged violations of the New Mexico Minimum

Wage Act" by Defendant.   *Id.* ¶ 8.   Defendant alleges that if in resolving Plaintiffs' Complaint

the Court finds the Agreements enforceable and determines that Plaintiffs have been properly

classified as independent contractors, the Court should enter an award of indemnification for

Defendant that includes an award of all costs, expenses, and reasonable attorney fees incurred by

Defendant in defending Plaintiffs' action.   *See id.* ¶ 14.

## STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v.*

*McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a 12(b)(6) motion, the Court

must accept as true all well-pled factual allegations in the complaint, view those allegations in the

light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor.   *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   Although this standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.*   Accordingly, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.*   Nor does a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557).   Thus, while a court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss.   *Id.* at 1950.

## DISCUSSION

Plaintiffs move to dismiss the Amended Counterclaim on two grounds.   First, Plaintiffs argue that their overtime claims pursuant to the New Mexico Minimum Wage Act do not fall within the scope of the Agreements' indemnification provisions because those provisions are limited to accidents causing personal injury or property damage and do not apply to actions for

overtime pay.    Second, Plaintiffs contend that even if their overtime claims did fall within the

scope of the indemnification provisions, the Court should strike those provisions because they are

unconscionable and in violation of New Mexico public policy.    In response, Defendant argues

that the plain language of the indemnification provisions encompasses Plaintiffs' overtime wage

claims and that Plaintiffs' public policy argument fails because Plaintiffs are not "employees"

protected by the New Mexico Minimum Wage Act.[1]

I.      Scope of the Indemnification Clauses

        A.      The Indemnification Clauses Do Not Cover the Alleged Harm

        In New Mexico,[2] a primary goal of contract interpretation is to ascertain "the intentions of

the contracting parties with respect to the challenged terms at the time they executed the contract."

*Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 964 (N.M. 2000) (internal quotation marks

and citation omitted); *Medina v. Sunstate Realty, Inc.*, 889 P.2d 171, 173 (N.M. 1995) (when

interpreting a contract, New Mexico courts give force and effect to the intent of the parties).

"When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is

confined to interpreting the contract that the parties made for themselves, and absent any

ambiguity, the court may not alter or fabricate a new agreement for the parties."    *Ponder*, 12 P.3d

---

[1]    In its Response to Plaintiffs' Motion to Dismiss Amended Counterclaim, Defendant suggests
that the Amended Counterclaim and Plaintiffs' Motion to Dismiss the Amended Counterclaim
render the Plaintiffs' first Motion to Dismiss moot.    Plaintiffs do not object to Defendant's
characterization.    The Court agrees with Defendant and therefore denies Plaintiffs' Motion to
Dismiss Counterclaim as moot.

[2]    When deciding diversity cases, federal courts apply the law of the state in which they are sitting,
including the state's choice of law provisions.    *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78
(1938).    Pursuant to the contractual choice of law provisions in the Agreements, *see* Am.
Countercl., Exh. A ¶ 5.08; *id.*, Exh. B, ¶ 11, the Court applies New Mexico substantive law.    *See
Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210, 214 (N.M. 1996).

at 964 (internal quotation marks and citations omitted).   A court must "consider the plain language of the relevant provisions, giving meaning and significance to each word or phrase within the context of the entire contract, as objective evidence of the parties' mutual expression of assent."   *H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 114 P.3d 306, 313 (N.M. Ct. App.), *cert. denied*, 137 N.M. 522 (2005); *see Medina*, 889 P.2d at 173 (in determining the intent of the parties a court must consider the entire contract and not just selected portions) (citation omitted).   When the parties' expressions of mutual assent are clear and unambiguous, the court must give effect to those expressions.   *See id.*   Whether the assent is clear and unambiguous is a question of law. *See id.* (citing *Levenson v. Mobley*, 744 P.2d 174, 176 (N.M. 1987)).

The indemnification provisions in the Agreements are not ambiguous and therefore the Court interprets the provisions according to their plain language within the context of the entire contract.   *See Aircoa*, 114 P.3d at 313; *Medina*, 889 P.2d at 173.   The indemnification clause in the Independent Contractor Agreement expressly applies to only three limited circumstances:   (1) harm caused by the "operation of the Equipment," which is defined as "[Plaintiff-Contractor's] self-provided vehicle, (2) "[Plaintiff-Contractor's] obligations under this Agreement," or (3) "breach by [Plaintiff-]Contractor of the terms of this Agreement."   The indemnification clause in the Subcontractor Agreement expressly applies to only two specific circumstances:   (1) harm caused by "the performance or failure of performance of this Agreement by Indemnitor[-Plaintiff]," or (2) harm caused by "any acts, omissions, or conduct of the Indemnitor[-Plaintiff]."   These circumstances are limited to harm caused by Plaintiffs.   Neither of the Agreements provides for indemnification of Defendant in the event of harm caused by Defendant.

Plaintiffs' Complaint alleges that Defendant violated the overtime provisions in the New Mexico Minimum Wage Act.   As such, the loss at issue here stems from Defendant's legal obligations to comply with the New Mexico Act.   Not surprisingly, given the explicit statutory basis for Plaintiffs' claims, Defendant makes no claim under its Amended Counterclaim that Plaintiff Andrew Casias caused the loss by (1) operating equipment improperly, (2) failing to fulfill any of his obligations under the Independent Contractor Agreement, or (3) breaching the Independent Contractor Agreement, or that Plaintiff Ernest Casias caused the loss by (1) performing or failing to perform under the Agreement, or (2) causing harm by his act, omission, or conduct.   The only loss to Defendant that the Amended Counterclaim alleges is that Plaintiffs filed a complaint against Defendant "seeking equitable relief, employment benefits, overtime pay, liquidated damages and attorney fees" due to Defendant's alleged violations of the New Mexico Minimum Wage Act.   Loss arising from the conduct of Defendant, however, is *not* within the scope of the indemnification clauses, as the Agreements specifically indemnify Defendant for loss caused by certain actions of Plaintiffs but not for loss caused by its own actions.

Indemnification clauses are strictly construed against the drafter.   *See United States v. Seckinger*, 397 U.S. 203, 210 (1970) (holding that with respect to indemnification clauses "a contract should be construed most strongly against the drafter").   This is especially so where the drafter seeks indemnification for its own future, wrongful conduct.   *See id.* at 211-12 (a court must be "firmly convinced" that the "intention of the parties" was to allow indemnitee to "recover for his own negligence" especially if there is a "disparity in bargaining power and economic resources between the parties"); *Tyler v. Dowell, Inc*., 274 F.2d 890, 895 (10th Cir.) (exculpatory clauses allowing an indemnitee to recover for its own negligence "are strictly construed against the

8

[indemnitee] and will not be enforced if the [indemnitee] enjoys a bargaining power superior to the [indemnitor]"), *cert. denied*, 363 U.S. 812 (1960).   Moreover, the intention to indemnify the indemnitee for its own wrongful conduct must be clear in the contractual language.   "[I]f [a defendant] expect[s] to shift the ultimate responsibility for its [wrongful conduct] to [a plaintiff], the mutual intention of the parties to this effect should appear with clarity from the face of the contract."   *Seckinger*, 397 U.S. at 212; *Tyler*, 274 F.2d at 895 ("New Mexico law sanctions exculpatory clauses . . . whereby one party covenants to hold another harmless and to indemnify him against loss caused by his own negligence if, and only if, the intention to do so is 'clear and unequivocal'") (citing *Metropolitan Paving Co. v. Gordon Herkenhoff & Assocs.*, 341 P.2d 460, 463 (N.M. 1959)).

On the facts here, the indemnification clauses on their face do not clearly provide that they will shift the responsibility for the allegedly wrongful conduct of Defendant to Plaintiffs.   Rather, the clauses limit Plaintiffs' indemnification to loss arising out of Plaintiffs' actions.   Plaintiffs' intention, therefore, is not "clear and unequivocal" to hold Defendant harmless and to indemnify Defendant against loss caused by Defendant's actions.   *See id.* (citations omitted).

Accepting as true all well-pled factual allegations in the Amended Counterclaim, viewing those allegations in the light most favorable to Defendant, and drawing all reasonable inferences in Defendant's favor, *see Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010), the Court concludes that the Amended Counterclaim fails to state a claim for indemnification for which relief can be granted.   The only loss that Defendant alleges in the Amended Counterclaim is loss arising out of Plaintiffs' lawsuit seeking damages based upon *Defendant's* wrongful conduct.   This type of loss is not covered by the plain language of the

9

Agreements' indemnification provisions.   Accordingly, the Court grants Plaintiffs' Motion to

Dismiss the Amended Counterclaim.

   Defendant's citation to *Spellman v. American Eagle Express, Inc.* and *Dowley v. Dewey*

*Ballantine, LLP* do not persuade the Court to conclude otherwise.   In support of its argument that

Plaintiffs' claims fall within the scope of the indemnification provisions in the Agreements,

Defendant argues that *Spellman*, although not binding on this Court, provides persuasive authority

that the Court should deny Plaintiffs' Motion to Dismiss.   The district court in *Spellman*

interpreted an indemnification provision substantially identical to the provision at issue here.   *See*

680 F. Supp. 2d 188, 189 (D.D.C. 2010).   In *Spellman*, plaintiffs seeking damages for violation of

the Fair Labor Standards Act (FLSA) argued that the defendant's counterclaim requesting

indemnification pursuant to an independent contractor agreement should be dismissed because the

plaintiffs' claims fell outside the scope of the indemnification provision.   *See id.*   The

indemnification provision limited indemnification to claims "arising out of or in connection with

[plaintiffs'] obligations under this Agreement."   *Id.*   The Court held that the plaintiffs' claims fell

within the scope of the provision because one of the plaintiffs' obligations was "the agreement to

work for a liquidated fee amount."   *Id.* at 191 (the independent contractor agreement provided, "It

is expressly understood and agreed that [plaintiffs-contractors'] fees for transportation services

rendered shall be as set forth in Appendix B and such fees shall constitute the total fees for

everything furnished, provided, or done by [plaintiffs-contractors] in connection with this

Agreement").   The *Spellman* court reasoned that the "crux" of the plaintiffs' lawsuit was that the

defendant had failed to pay them for overtime and for all hours worked as required by the FLSA,

or, stated differently, that plaintiffs were owed more than the liquidated fee they agreed to accept.

*See id.*   The court therefore concluded that the defendant had a reasonable basis for alleging that

the lawsuit was an action against it "arising out of or in connection with [the

plaintiffs-contractors'] obligations under this Agreement."   *Id.*

     *Spellman*, however, is distinguishable on its facts because there is no language in the

Agreements at issue here indicating that "[i]t is expressly understood and agreed that [the stated]

fees shall constitute the total fees for everything furnished, provided, or done . . . in connection

with this Agreement," *see id.*, as there was in the contract in *Spellman*.   Here, the Independent

Contractor Agreement only provides under Article IV entitled "Compensation" that "Contractor

[Andrew Casias] will be paid as described on the agreed upon Statement of Work."   *See* supra p.

3.   Likewise, the Subcontractor Agreement provides only that the "Company agrees to pay

Carrier [Ernest Casias] on the basis of the attached Statement of Work."   *See id.*   In addition,

*Spellman* is distinguishable because in *Spellman* one of the plaintiffs' contractual "obligations"

was "the agreement to work for a liquidated fee."   680 F. Supp. 2d at 191.   Under the

Independent Contractor Agreement, however, Plaintiff Andrew Casias's enumerated duties set

forth in Article III's "Duties of Contractor" did not include an obligation to work for a set fee.   *See*

*supra* p. 3.   Likewise, the Subcontractor Agreement specifies that it was *Defendant's* obligation

to pay the fee, and not Plaintiff Ernest Casias's obligation to accept only that fee.   *See id*.

     The Court further notes that even if *Spellman* were not distinguishable on its facts, the

Court is not persuaded that the *Spellman* court gave meaning to the plain language of the

indemnification provisions in the contract at issue.   In *Spellman*, the provision limited

indemnification to claims "arising out of or in connection *with [plaintiffs'] obligations* under this

Agreement."   *Id.* at 189 (emphasis added).   To bring the loss within the scope of the

indemnification clause, the *Spellman* court was forced to engage in mental gymnastics to characterize the loss as one arising from the plaintiffs' purported contractual obligation to work for a liquidated fee, when in fact the loss much more directly arose out of the defendant's alleged violation of its statutory obligations under the FLSA.   *Cf. id.* at 191.

In the Agreements at issue here, Plaintiffs promised at the most basic level to provide Defendant with transportation services, *see, e.g.*, Am. Countercl., Exh. B, ¶ 2 (carrier agrees to provide "pickup and delivery service on specified shipments"), and Defendant promised to provide Plaintiffs with compensation in exchange for those services, *see, e.g.*, *id.*, Exh. B, ¶ 8 ("Company agrees to pay Carrier on the basis of the attached Statement of Work") (emphasis added).   A plain reading of the language of the Agreements unambiguously reveals that the payment obligation is Defendant's.   If the Court were to turn the obligation on its head and characterize it instead as Plaintiffs' obligation to accept payment, the Court would be "alter[ing] or fabricat[ing] a new agreement for the parties," *Ponder*, 12 P.3d at 964, rather than considering the plain language of the Agreements, *see H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 114 P.3d 306, 313 (N.M. Ct. App. 2005).

Moreover, if the Court applied the *Spellman* reasoning, the Court would not be giving the required "meaning and significance to each word or phrase" in the indemnification provisions. *Cf. id.*   The provisions explicitly limit indemnification to loss caused by Plaintiffs.   Specifically, the Independent Contractor Agreement indemnifies Defendant for loss arising out of Plaintiff Andrew Casias's obligations under the Agreement and the Subcontractor Agreement indemnifies Defendant for loss arising out of Plaintiff Ernest Casias's performance or failure of performance under the Agreement.   *See supra* pp. 2-3.   If the Court were to read every affirmative obligation

12

of the Defendant in the Agreements as an inverse obligation of the Plaintiffs, all of the contractual

obligations in the Agreements would become the obligations of the Plaintiffs.   Such a reading

effectively would render the language in the indemnification provisions, which limits the

indemnification to loss arising from "[Plaintiff's] obligations under the Agreement," superfluous

and without meaning.   The Court declines to construe the Agreements in such a manner that is

contrary to well-established principles of contract interpretation.   *See, e.g.*, *id.* (a court must

"consider the plain language of the relevant provisions, giving meaning and significance to each

word or phrase within the context of the entire contract, as objective evidence of the parties'

mutual expression of assent"); *Medina v. Sunstate Realty, Inc.*, 889 P.2d 171, 173 (N.M. 1995) (in

determining the intent of the parties a court must consider the entire contract and not just selected

portions) (citation omitted).

　　　Defendant also cites *Dowley v. Dewey Ballantine, LLP*, a case decided by the United States

District Court for the District of Columbia, in support of its argument that Plaintiffs' claims fall

within the scope of the indemnification provisions.   *See* No. 05-622, 2006 U.S. Dist. LEXIS

23304 (D.D.C. Apr. 26, 2006).   The *Dowley* court interpreted the phrase "arising out of" in the

context of an arbitration agreement providing that "a controversy or claim arising out of this

Agreement . . . shall be settled by arbitration."   *Id.* at *28 (emphasis added).   The district court

held that the phrase "reaches all disputes having their origin or genesis in the contract, whether or

not they implicate interpretation or performance of the contract *per se.*"   *Id*. at *29.   Defendant

maintains that on the facts here, it is likewise beyond question that Plaintiffs' causes of action have

their "origin or genesis" in the Agreements.

13

*Dowley*, however, is easily distinguishable.   In *Dowley*, the district court was interpreting the broad phrase "arising out of *this Agreement*," whereas on the facts here, the "arising out of" language is thereafter expressly limited to harm attributable to Plaintiffs' actions and therefore not as broad as the clause in *Dowley*.   Specifically, the at-issue language is limited to harm "arising out of . . . Contractor[-Plaintiff]'s obligations under this Agreement" in the Independent Contractor Agreement and harm "arising out of the performance or nonperformance of this agreement by the Indemnitor[-Plaintiff]" in the Subcontractor Agreement.  *See supra* pp. 2-3. Unlike *Dowley*, then, the Agreements here do not require a broad indemnification for claims or loss "arising out of" the Agreements.   Because the language of the indemnification provisions expressly limits the indemnification to harm arising out of Plaintiffs' actions, and excludes harm arising out of Defendant's actions, *Dowley* does not apply.

B.      The Agreements Evince an Intent to Indemnify, Not Exculpate, Defendant

The Court also grants Plaintiffs' Motion to Dismiss the Amended Counterclaim on the ground that the Agreements do not evince a "clear and unequivocal" intention by Plaintiffs to exculpate Defendant for claims accruing to Plaintiffs against Defendant, but rather only an intent to indemnify Defendant for claims accruing to third parties against Defendant.   "While the terms indemnity and exculpatory are often used interchangeably, they are, in fact, different.   'An exculpatory clause releases in advance the second party for any harm the second party might cause the first party after the contract is entered.   [An] indemnification clause . . . protects against claims made by parties outside the contract.'"  *Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206-07 (10th Cir. 2012) (quoting *Federated Rural Elec. Ins. Corp. v. Williams*, NO. 97,043, 97,051, 2002 WL 31041863, at *4 (Okla. Civ. App. July 12, 2002)).   There is a "'great[]

14

material difference between a covenant . . . releasing [an indemnitee] from and agreeing not to sue him on claims accruing to [an indemnitor] and [a] covenant[] . . . agreeing to indemnify [an indemnitee] and hold him harmless from claims of others.'"   *Huffman v. Saul Holdings Ltd.*, 194 F.3d 1072, 1082 (10th Cir. 1999) (quoting *Martin v. Am. Optical Co.*, 184 F.2d 528, 529 (5th Cir. 1950)) (additional citation omitted); *see also Redding v. Gulf Oil Corp.*, 324 N.Y.S.2d 490, 493 (N.Y. Super. Ct. 1971) (a general indemnification clause does not indicate an intention to include injury to the lessee), *aff'd*, 38 A.D. 2d 850 (1972), *cited in Huffman*, 194 F.3d at 1082.

New Mexico law "sanctions exculpatory clauses . . . whereby one party covenants to hold another harmless and to indemnify him against loss caused by [its] own negligence if, and only if, the intention to do so is 'clear and unequivocal.'"   *Tyler v. Dowell, Inc.*, 274 F.2d 890, 895 (10th Cir. 1960) (citing *Metropolitan Paving Co. v. Gordon Herkenhoff & Assocs.*, 341 P.2d 460, 463 (N.M. 1959)) (additional citations omitted).   New Mexico courts have not determined under what circumstances an exculpatory clause will allow an indemnitee to seek indemnification for loss caused by the indemnitee's violation of its statutory obligations (under the New Mexico Minimum Wage Act or otherwise), but presumably the standard would be the same.   *Cf. United States v. Hardage*, 985 F.2d 1427, 1435 (10th Cir. 1993) (finding an exculpatory clause sufficiently broad and unequivocal to exculpate the indemnitee from negligence *and* strict liability).

To determine whether a particular contract evinces the necessarily "clear and unequivocal" intent to exculpate the indemnitee from the indemnitor's claims, or whether it instead constitutes an indemnification provision applicable only to third-party claims against the indemnitee, the Court must interpret the plain language of the contract, giving meaning and significance to each word or phrase within the context of the entire contract, as objective evidence of the parties'

15

mutual expression of assent."   *H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 114 P.3d 306, 313

(N.M. Ct. App. 2005); *see also Medina v. Sunstate Realty, Inc.*, 889 P.2d 171, 173 (N.M. 1995)

(citation omitted).   In this regard, the Tenth Circuit case *Metroplex Corp. v. Thompson Industries,*

*Inc.* is instructive.   The *Metroplex* court, in construing the terms of a similar indemnification

provision, held that the provision did not exculpate the indemnitee and that the indemnitee

therefore could not seek attorney's fees based upon the indemnitor's claims against it.   *See* Nos.

00-4183, 00-4200, 01-4003, 2002 U.S. App. LEXIS 540, at *14 (10th Cir. Jan. 10, 2002).

    In *Metroplex*, the plaintiff-indemnitor, who had hired the defendant-indemnitee to install

railroad ties for a railroad the plaintiff was constructing, alleged that the defendant had installed a

defective product.   *See id.* at *3-4.   The defendant-indemnitee argued that the

plaintiff-indemnitor should indemnify the defendant for its attorney's fees based upon the

indemnification agreement the plaintiff had signed.   *See id.* at *4, 11.   The *Metroplex* court ruled

against the indemnitee, however, holding that the provision the indemnitee alleged authorized its

recovery of attorney's fees "by its plain terms [could not] be construed as a contract to pay

attorneys' fees in the event of a contract dispute *between the [indemnitee] and the [indemnitor]*."

*Id.* at *14 (emphasis added).

    In so holding, the *Metroplex* court noted first that the contract provision itself was

ambiguous as to whether it was an indemnification or exculpatory clause, because it "could

reasonably be interpreted as either an indemnification clause limiting [the indemnitee's] recovery

of attorney's fees to third-party lawsuits or a provision covering *any* losses sustained by [the

indemnitee] as a result of the delivery of nonconforming goods."   *Id.* at *11.   The court therefore

resorted to a second level of contract interpretation, looking at the provision in the context of the

"four corners of the document," and determined that the language of the four corners of the contract plainly indicated that the provision was one of indemnification and not exculpation.   *See id.* at *11, 12-13.   Specifically, the court noted that (1) the provision uses the "traditional indemnification language" of "save and hold harmless," "which leads one to believe the entire paragraph is dealing with indemnification," (2) the title of the paragraph "plainly" states "Responsibility and Indemnification," indicating that the entire paragraph is an indemnification provision, and (3) the paragraph includes express reference to a lawsuit "brought by a third party," which contemplates indemnification for third-party claims and not exculpation.   *Id.*   For these reasons, the *Metroplex* court held that the language "arising out of the performance of any work or the furnishing of any item or material by [the indemnitor] under this order" was an indemnification clause limiting the indemnitee's recovery of attorneys' fees to third-party lawsuits and precluding the indemnitee's recovery of attorney's fees for a dispute between the parties.   *See id.* at *11, 14.

The language of indemnification in the case at bar is substantially similar to that in *Metroplex*.   In *Metroplex*, the indemnitor agreed to "hold and save harmless" the indemnitee from loss "arising out of the performance of any work . . . by [the indemnitor]."   *Id.* at *10.   Here, Plaintiff Andrew Casias agreed to "indemnify and hold harmless" the Defendant from loss "arising out of or in connection with . . . [Plaintiff's] obligations under this Agreement," while Plaintiff Ernest Casias agreed to "indemnify and hold harmless" the Defendant from loss "arising out of the performance or failure of performance of this Agreement by the [Plaintiff]."   The Agreements here contain the same language in *Metroplex* limiting covered losses to those caused by the indemnitor.   In addition, the provisions here contain similar "hold harmless" language, which as in *Metroplex* compels the Court to conclude that the entire paragraph deals with indemnification.

17

*Cf. id.* at *12.   Likewise, the paragraphs here are titled "Indemnity" and "Indemnification," which is indicative of an intent to indemnify and not to exculpate.   *Cf. id*. at *12-13.   Finally, the indemnification provision in the Subcontractor Agreement, like that in *Metroplex*, *cf. id.* at * 14, contains an express reference to claims brought by third-party "shippers, consignees, members of the public, drivers or employees," *see supra* p. 3.   The Court therefore adopts the *Metroplex* court's reasoning and concludes that the Agreements at issue in the case at bar fail to evince a "clear and unequivocal" intent to exculpate the Defendant from the Plaintiffs' claims.

The Court further notes that the facts in case at bar are distinguishable from those cases in which courts have found a "clear and unequivocal" intention of exculpation.   For example, in *United States v. Hardage*, the Tenth Circuit applying Oklahoma law held "that the term 'resulting from' is the type of all-inclusive and unambiguous language sufficient to exculpate" a party from its own negligence or strict liability.   985 F.2d 1427, 1435 (10th Cir. 1993).   *Hardage*, however, is inapplicable here because the contract language at issue in *Hardage* was extremely broad, whereas the language here is narrow.   Specifically, the contract language in *Hardage* covered loss from harm "resulting from the transporting or disposal of [MDC's hazardous] materials."   *Id*.   In support of its conclusion, the *Hardage* court cited numerous other cases with similarly broad language, in which courts likewise had determined that the language "resulting from" was sufficiently broad to exculpate.   *See id.*   Importantly, however, the *Hardage* court also cited *Sinclair Oil & Gas Co. v. Brown* for the proposition that the language "resulting from" is not sufficiently broad when directly followed by the more restrictive language of "the operations of Contractor."   *Sinclair*, 333 F.2d 967, 968-69 (10th Cir. 1964) (indemnity clause did not establish

exculpatory indemnification because it applied only to losses "resulting from the operations of Contractor hereunder"), *cited in Hardage*, 985 F.2d at 1435.

The facts in *Hardage* and the cases cited therein are distinguishable from the facts here. The *Hardage* language "resulting from the transporting or disposal of [MDC's hazardous] materials" does not limit the harm to that caused by the indemnitor but rather includes all harm resulting from the transportation or disposal of the indemnitee's hazardous materials, regardless of whether caused by the indemnitor or indemnitee.   *See* 985 F.2d at 1435.   In contrast, the narrow contractual language in the case at bar is akin to the more limited language of *Sinclair*.   *See* 333 F.2d at 968-69.   The language here, as in *Sinclair*, does not evince a clear and unequivocal intent for Plaintiffs to exculpate Defendant for Defendant's own alleged unlawful conduct against Plaintiffs.   Specifically, the language limits the harm to that "arising out of or in connection with the . . . Contractor's   obligations under this Agreement."   This limiting clause indicates that the provision applies only to harm caused by Plaintiffs and not to harm caused by Defendant's alleged violation of its statutory obligations.

The Court concludes that the indemnification clauses in the Agreements fail to evince a clear and unequivocal intent to exculpate.   Rather, the clauses are analogous to those in *Metroplex* and *Sinclair* and are not clauses of exculpation but rather are clauses of indemnification for third-party claims.   As such, the indemnification provisions do not provide a basis for Defendant's recovery of loss attributable to Plaintiffs' claims under the New Mexico Minimum Wage Act.   Accordingly, Defendant has not stated a claim for relief and the Amended Counterclaim therefore is dismissed.

II.      Unconscionability of the Indemnification Provisions

Plaintiffs contend that even if their overtime claims fell within the scope of the indemnification provisions, the Court should strike those provisions because they are unconscionable and in violation of New Mexico public policy.   In response, Defendant argues that Plaintiffs' public policy argument fails because Plaintiffs are not "employees" protected by the New Mexico Minimum Wage Act but rather are independent contractors exempted from the Act.   The Court already has concluded that Defendant's Amended Counterclaim fails to state a claim upon which relief can be granted on the ground that the loss alleged does not fall within the scope of the indemnification provisions.   The Court therefore need not—and does not—consider Plaintiffs' additional argument that the indemnification provisions, as applied to Plaintiffs' claims under the New Mexico Minimum Wage Act, are unconscionable and should be stricken as a violation of New Mexico public policy.

## **CONCLUSION**

For the foregoing reasons, it therefore is ordered that Plaintiffs' Motion to Dismiss Counterclaim [Doc. 20] is denied as moot and Plaintiffs' Motion to Dismiss Amended Counterclaim [Doc. 23] is granted.

Dated this 28th day of September, 2012.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE